IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RODNEY FOURA<br>311 Harvest Field Lane<br>York, PA 17403 | : <br> : <br> : <br> : | |
| Plaintiff, | : | |
| vs. | : | Civ. Act.  Number |
| | : | |
| NATIONAL RAILROAD PASSENGER<br>CORPORATION, a/k/a Amtrak<br>50 Massachusetts Ave NE,<br>Washington, DC 20002 | : <br> : <br> : <br> : | |
| | : | |
| Defendant. | : | **JURY DEMAND** |

### CIVIL ACTION –COMPLAINT

1.  The Plaintiff Rodney Foura is a citizen and resident of the State of Pennsylvania residing at 30 Charles Circle, York Pennsylvania.

2.  The Defendant, National Railroad Passenger Corporation, also known as Amtrak ("Amtrak"), is a corporation established by an Act of Congress of October 30, 1970, 84 Stat. 1328 et seq., commonly known as Rail Passenger Service Act of 1970 and amendments thereto, and was at the time of the injury hereinafter alleged, and is now, doing business within the jurisdiction of this Court as an interstate common carrier of passengers for hire by rail into and from the various States of the Union and the District of Columbia.

3.  At all times relevant herein, Defendant was railroad carrier engaged in interstate commerce within the meaning of 49 U.S.C. 20109(a).

4.  At all times relevant hereto, Plaintiff was an employee of Defendant working as an Assistant Supervisor in the C & S Department.

5.  This action is brought pursuant to the Federal Railroad Safety Act. 49 U.S.C. 20109 et sq.

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. 1331 on the basis that the suit arises out of a federal question and the acts and omissions giving rise to this lawsuit occurred in and around Washington, D.C.

7. The subject matter of this action was the subject of a Complaint filed with the Secretary of Labor, pursuant to 49 U.S.C. 20109(d)(1) on January 30, 2022. This action is now brought before this Court as an original action in accordance  with 49 U.S.C. 20109(d)(3), the criteria of the provisions having been satisfied that:

       a) More than 210 days have passed since the filing of Plaintiff's Complaint with the Secretary of Labor;

       b) The fact that that more than 210 days have passed since the filing of his Complaint is not the result of bad faith on the part of the plaintiff; and

       c) The Secretary of Labor has not issued a final decision.

8. Plaintiff alleges that as set forth herein, Defendant violated the provisions of the Federal Railroad Safety Act which prohibit railroad carriers engaged in interstate commerce from discharging, demoting suspending reprimanding or in any way discriminating against an employee for following one of the statutorily protected activities.  49 U.S.C. 20109 et sq.

9. Plaintiff alleges that he was improperly reprimanded and discharged by Defendant as a result of making repeated safety complaints regarding his workplace.  His complaints were disregarded by Defendant.  As a result of these complaints, punitive actions were imitated against Plaintiff resulting in his termination.

10. Plaintiff alleges that as set forth herein, Defendant violated the provisions of the Federal Railroad Safety Act which prohibit railroad carriers engaged in interstate commerce from discharging, demoting, suspending, reprimanding, or in any way discriminating against an employee for refusing reporting unsafe working conditions and put him at risk for serious bodily harm.

## COUNT I

11.    Plaintiff hereby restates and realleges paragraphs 1-10 as if restated herein.

12.    Mr. Foura was a Signal Inspector in the Defendant's Communication and Signal Department (hereinafter C & S department).

13.    Starting on or about April 2, 2021, Plaintiff discovered that Amtrak workers under his supervision were not properly completing work assignments and tests required under the Federal Railroad Administration (hereinafter "FRA").

14.    The Plaintiff worked under the supervision of Thomas Maxfield. Plaintiff informed Mr. Maxfield of issues that the workers were having with simple tasks on the job related to signal wiring and Mr. Maxfield noted Plaintiff Rodney Foura should provide more detailed job briefings to address the situation.

15.    During the next several work shifts, Plaintiff reviewed the job taskswith these employees and instructed them that their work had to be done in accoradance with the Federal Railroad Adminstation's mandates (hereinafter FRA). These mandates includes reporting,  FRA switch testing, quarterly maintenance, point detector testing, switch locking test, CP valve balanced air testing and restore feature testing.

16.    Plaintiff provided thorough job briefings for each assigned tasks and during the interactions with his workers, it became apparent that the workers were not familiar with required information, Plaintiff also became concerned that some of the workers were not doing FRA

testing as required and/or if they were doing FRA testing were not doing it properly or completely.

17.    The workers signed off of the job briefings conducted by the Plaintiff and acknowledged that they were informed of the requirements to properly perform FRA testing.

18.    Shortly after the job briefings, two of the workers at the briefing became verbally aggressive with the Plaintiff and cursed at him for now enforcing FRA tests that they informed him were never before enforced.

19.    Plaintiff informed his supervisor of this information and noted that these workers had previously signed off on the FRA's testing and noted that he was going to require the workers to  perform the tests on the signals and switches as required moving forward.

20.    After the briefing, Plaintiff also reviewed some of the signal work that was done by  one of the workers at the briefing. This worker indicated that his work on a section of switches was completed but when plaintiff reviewed the work, he noted that they work was not done in accordance with FRA requirements. Mr. Foura requested that the worker redo the work following FRA requirements.

21.    Mr. Foura notified his supervisor Thomas Maxfiled about his observations and concerns that FRA testing was not being done and/or not being done properly and being signed off as completed by the workers. Upon information and believe, Supervisor Maxfield informed his supervisor Senior Engineer Wallace Badur of his concerns and observations.

22.     Over the next few weeks, the workers that Mr. Foura supervised became hostile and verbally aggressive with Mr. Foura on multiple occasions complaining that he was responsible for additional work and mandating FRA testing be done properly.

23.     Over the course of the next two months, it became clear that despite Mr. Foura's best efforts, the workers were still taking short cuts and not properly performing FRA testing. In that time, Mr. Foura uncovered several issues including falsified FRA testing, the failure of workers to properly test switches and signals and failing to work on switches and signals and reporting that the work was not only being done but being done in accordance with FRA standards.

24.     Improper and falsification of switch testing leads to incorrect adjustments of switch machine locking, point detectors, point pressures and  gapped points.  If these switching systems do not operate properly or fail, trains operating through these switches will derail and result in train accidents.

25.     Improper and falsification of signal system testing and not making repairs to signal defects, leads to failure of train detection allowing signal routes being displayed into sections leading to potential train accidents, collisions  and derailments.

26.     Mr. Foura and Supervisor Maxfield continued to complain to their supervisors at Amtrak about the presence of FRA defects in the switches and signals and the culture of workers to bypass FRA mandated testing and repairs.

27.     Plaintiff requested that Amtrak Management allow him to discipline the workers that were not complying with the FRA mandates.  Amtrak Management did not initially respond

to Plaintiff's request to allow him to discipline employees that for failing to properly test signal and switches and/or to falsify FRA documents. Plaintiff also requested institutional support to address the safety complaints related to improper inspection and maintenance on switches and signals.

28.     After Amtrak supervision failed to act, Plaintiff and his supervisor Thomas Maxfield initiated an inspection plan to periodically review the work on signals and switches due to concerns that the workers were still not performing the work as required by the FRA. Plaintiff and Supervisor Maxfield, began to spray paint defects found with green paint, if defects were there for second inspection, they were painted blue.

29.   The new inspection discovered numerous safety violations and defects.

30.   Over the next few weeks, despite the new plan finding violations and defects, it became clear that the Plaintiff's complaints and concerns for assistance to Amtrak supervision were not being addressed,

31.   The workers that were responsible for the Plaintiff's complaints realized that Amtrak Supervision was not responsive to the safety concerns raised by Plaintiff and the workers under his supervision became more antagonistic and unreceptive to instruction.

32.     Plaintiff continued to request assistance from Amtrak to ensure that FRA mandated testing was being done properly. Amtrak supervision failed to properly respond to Plaintiff's complaints, and signaled to the workers that Plaintiff's concerns about FRA testing and reporting was not important to the workplace.

33.    Workers were making it know to Plaintiff that his efforts to require FRA mandated testing and to inspect for defects were not supported by supervision and that by insisting that workers perform the FRA testing and that his uncovering defects in his inspections was not supported by Amtrak supervision and that they were not going to do the work as Plaintiff requested.

34.    Workers began to delay projects and actively perform work in a way that resulted in noncompliance with FRA inspection and testing requirements.

35.    Plaintiff had several meetings with Amtrak supervision about the situation and Amtrak supervision took a negative and disproving attitude to Plaintiff's complaints and would refer to the issue as "this again" when plaintiff would complain.

36.    Over the course of the next several months, Plaintiff would continue to complain about specific employees poor work performance and their failure to properly repair and test equipment and continue to improperly approve FRA testing.

37.    Employees that were the subject of these complaints began to complain that they were being harassed by Plaintiff when Plaintiff was requesting the workers to perform their assigned job tasks.

38.    The initial complaints of harassment were discussed with the Plaintiff, and it was clear that the complaints of harassment were not sustainable and not substantiated because they were directly related to the inspections that Mr. Foura was performing and sharing his findings that that several workers were not properly performing their assigned tasks and requiring the workers to fix their mistakes.

39.    From September 2021 through January 2022, Plaintiff reported several unsafe work conditions to Amtrak management, and he also reported that switches that he inspected did not have testing done on them but were reported as tested by employees.

40.    On one occasion in December 2021, Plaintiff was accused of harassment by an employee after his inspection of the employees' work showed that FRA required testing was not performed on several switches. The harassment claim was that Mr. Foura, a signal inspector was harassing the worker because he was inspecting the signals and switches that he was responsible for.

41.    Despite being aware of the prior dubious complaints by discontented workers, on February 1, 2022, Amtrak took Plaintiff out of service and alleged that Plaintiff violated Amtrak policy of using sexually explicit language in the workplace to numerous employees on a routine basis.

42.    Plaintiff workplace was one where childish, crude and boorish language and behavior was prevalent for year. There was regular use of salty and tasteless language used without objection by workers and supervisors.

43.    Plaintiff was regularly confronted with locker-room talk and the subject of rude language and behavior.

44.    The timing of complaints regarding Plaintiff's behavior coincides with his attempts to have Amtrak address workplace safety violations. Taking Plaintiff out of service and alleging use of improper language and behavior was selective and convenient enforcement of Amtrak's code of conduct.

45.     Plaintiff's language and behavior was substantially similar to his co-workers and discipline was temporally and causally related to and stemmed from complaints made against Plaintiff for enforcing FRA mandated testing and for reporting that Amtrak employees were reporting FRA testing was completed when in fact it was not being done or was not being done properly.

45.     The policy used to terminate Mr. Foura is an open-ended general policy that can be applied to any action by any employee at any time and specifically set up to improperly terminate an employee such as Mr. Foura who made a workplace safety complaint and acted as a whistleblower.

46.     The selective enforcement against Mr. Foura was readily apparent during the investigative hearing in this matter since there was clear evidence of a culture and similar behavior prevalent throughout the Amtrak facility in Washington, D.C.

47.     Amtrak's effort to discredit Plaintiff was based on several months of failing to respond to his complaints and in retaliation for his efforts to call attention to his department's practice to disregard FRA mandated testing and reporting,

48.     Mr. Foura was reprimanded and terminated for making complaints regarding safety and security conditions on his job.

49.  49 U.S. Code § 20109 - Employee protections states:

**HAZARDOUS SAFETY OR SECURITY CONDITIONS.—**
**(1)**A railroad carrier engaged in interstate or foreign commerce, or an officer or employee of such a railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for—

**(A)** reporting, in good faith, a hazardous safety or security condition

50..    The actions taken against the Plaintiff as set forth above were arbitrary and due in whole or in part due to the protective activity set forth in Paragraphs above.

51..    Defendant's conduct as set forth herein has created a work environment that is hostile to employee's rights under the Federal Railroad Safety Act and has had a significant impact on the exercise of those rights.

52..    As a result of the acts and omissions alleged herein, Plaintiff has suffered damages in the form of reprimand, termination, loss of seniority, loss of position, lost wages, as well as past and future mental anguish and emotional distress.

53.    As a result of the acts and omissions alleged herein, Plaintiff was reprimanded and terminated, and his work future has been compromised.

54.    Defendant's conduct as set forth herein reflects malice and indifference to Plaintiff's federally protected rights was intentional, egregious and warrants the statutory maximum of punitive damages to deter Defendant and other supervisors employed by Defendant from similar conduct.

55.    As a result of the Defendant's conduct set forth heron, Plaintiff has and will continue to incur costs, expenses and attorney fees related to this action and related to enforcement of her rights under the Federal Railroad Safety Act.

WHEREFORE,  Plaintiff respectfully requests for a monetary judgment against the Defendant for lost pay, reinstatement of job without limitation with restored seniority, for past and future mental and emotional injury and harm, for his costs, expenses and attorney fees as authorized by 49 U.S.C. 20109(e)(1)(2).  Additionally, Plaintiff respectfully requests punitive damages as authorized under 49 U.S.C. 20109(e)(3), plaintiff seeks the additional relief reinstatement to his prior position, and an order requiring the defendant remove all references

to the discipline from the Plaintiff's record and that defendant remove all documents of his reprimand and termination, and any other related references of his termination form his record.

**Respectfully submitted,**

**JERRY MARTILLOTTI & ASSOCIATES**

Gerard J. Martillotti, Esquire  /s/
BAR ID No. 43419
4221 Ridge Ave.
Philadelphia, PA 19129
Attorney for Plaintiff
(215) 849-9040
*martillottilaw@verizon.net*